IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PHILLIP ALLEN CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:14cv377-TFM |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**I. Introduction**

Plaintiff Phillip Allen Clark ("Clark") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that he is unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court AFFIRMS the Commissioner.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)   Is the person presently unemployed?
> (2)   Is the person's impairment severe?
> (3)   Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)   Is the person unable to perform his or her former occupation?
> (5)   Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Clark was 52 years old at the time of the hearing. R. 46, 50. He has completed high school and one year of college. R. 222, 260. He was employed as a

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

shipping clerk in the cloth room at Russell Corporation for 27 years until the plant closed in August 2009. R. 50. He alleges that he became disabled on August 14, 2009, from hearing loss, arthritis in his neck, panic attacks, high blood pressure, heart rate problems, and an allergy to sunlight. R. 185. After the hearing, the ALJ found that Clark suffers from severe impairments of degenerative disc disease to the cervical spine, arthritis to the left shoulder, high frequency hearing loss, and anxiety with panic disorder and non-severe impairments of gastroesophageal reflux disease, hypertension, and migraine headaches. R. 26. The ALJ concluded that Clark has performed no past relevant work, but that he retains the residual functional capacity to perform light work with limitations. R. 32. Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy which Clark could perform, including work as a office helper, assembler, and wire worker. R. 38. Accordingly, the ALJ concluded that Clark is not disabled. *Id.*

**B. The Plaintiff's Claim.** As stated in his Brief in Support of the Complaint, Clark presents the following issue for review:

> Whether the final decision of the Commissioner of the Social Security Administration denying benefits to Plaintiff is supported by substantial evidence and whether improper legal standards were applied –
>
> Specifically, the ALJ's RFC findings are not based on substantial evidence as corroborated by two treating physician opinions.

Doc. 11, Pl's Br., p. 1.[4]

---

[4] Plaintiff makes passing references in the body of his argument regarding sedentary work and a function-by-function analysis. Plaintiff, however, did not list these issues in a concise and specific manner under the Statement of Issues in compliance with this court's Order. See Doc. 2, Order to Answer Complaint. Consequently, this court will not consider these arguments.

## IV. Discussion

Clark argues that the ALJ's determination that he has the residual functional capacity to perform light work with limitations is improper because he failed to properly consider the opinions of his treating physicians. Specifically, he asserts the ALJ erred in discounting the opinions of Dr. William Blythe, an otolaryngologist, and Dr. James Edwards, a psychiatrist.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence

5

supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence.  *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.  *Schnorr*, 816 F.2d at 581.

First, Clark argues the ALJ erred in assigning limited weight to Dr. Blythe's opinion that he should be considered as a candidate for disability.  Specifically, he argues that the ALJ's finding that "the record as a whole, including claimant's testimony, indicates that his hearing impairment limits the scope of work he can perform but does not entirely prevent him from engaging in substantial gainful activity" is not supported by substantial evidence. R. 35.

After reviewing all the medical records, the ALJ discounted Dr. Blythe's opinion that Clark should be considered as a candidate for disability.  Specifically, the ALJ found:

> Social Security Ruling 96-7 states that in cases where the adjudicator

6

>has personally observed the claimant, as in this hearing, the adjudicator may not accept or reject the claimant's complaints solely on the basis of such personal observations; however, the adjudicator should consider any personal observations in the overall evaluation of the credibility of the claimant's allegations.  In this case, the undersigned notes that the claimant was able to hear and answer questions appropriately even though he was sitting on the opposite side of the hearing room. This observation supports the conclusion that the claimant would be able to function effectively in a low noise environment with the limited communication requirements described in the . . . residual functional capacity assessment.
>
>As for the opinion evidence, the undersigned has considered the statement provided by Dr. Blythe on January 18, 2012, describing the extent of the claimant's hearing loss and stating that he thought Mr. Clark was an appropriate candidate for consideration of disability (Exhibit 21F).  The undersigned also notes that in January 2010, Dr. Blythe advised the claimant to apply for disability based on his hearing loss (Exhibit 1F). The undersigned gives limited weight to Dr. Blythe's opinion evidence, as the record as a whole, including the claimant's testimony, indicates that his hearing impairment limits the scope of work he can perform but does not entirely prevent him from engaging in substantial gainful activity.

R. 35.

The ALJ's determination regarding the extent of Clark's hearing impairment is supported by substantial evidence.  The medical records indicate that Clark suffers from a hearing impairment.  On January 26, 2010, Clark presented to Dr. William R. Blythe, an otolaryngologist, with complaints of hearing loss.  R. 346-47.  Audiology testing indicated

>. . . a high frequency loss.  The patient has a profound hearing loss in the right ear above 1,000 hertz.  He has an 80 decibel hearing loss in the left above 1,000 hertz. He has 80% discrimination on the left and 48% discrimination on the right.

R. 347.  Dr. Blythe assessed bilateral severe profound high frequency sensorineural hearing loss.  *Id.*  He recommended that Clark apply for disability and for vocational rehabilitation

in order to receive amplification, emphasizing that "[h]e desperately needs amplification to be reasonably employable." *Id.*

In February 2011, Clark returned to Dr. Blythe "complain[ing] that his hearing has not improved whatsoever and we would not expect it to." R. 352. The otolaryngologist noted that an audiogram demonstrated bilateral high frequency sensorineural hearing loss with no significant changes since his last visit. R. 353. In addition, the hearing specialist noted that Clark "is significantly hearing impaired and warrants consideration for disability." Id.

The ALJ's determination that Clark would be "able to function effectively in a low noise environment with the limited communication requirements" is supported by substantial evidence in the record. For example, on April 26, 2011, Dr. Dimtcho V. Popov, a consultative examining physician, noted:

> . . . Pt has no obvious problem hearing, speaking or understanding (and I speak with an accent). Pt was able to follow commands during the physical exam even with no hearing aids in and not looking at me (could not read lips!). Pt [did] not ask me once to repeat myself.

R. 390. In addition, the transcript of the hearing before the ALJ indicates that Clark was able to answer all of the ALJ's questions without difficulty, with the exception of one question he asked the ALJ to repeat. R. 74. Thus, the ALJ's assignment of little weight to Dr. Blythe's opinion that Clark is a "candidate for disability" is supported by substantial evidence. Moreover, the "ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (citing 20 C.F.R. §§

404.1513, 404.1527, 404.1545).

Next, Clark argues the ALJ erred in assigning little weight to the medical source statement completed by his psychiatrist, Dr. Edwards. In a Medical Source Opinion Form dated December 12, 2011, Dr. Edwards indicated Clark has marked limitations in his ability to respond appropriately to co-workers and customers or other members of the general public, moderate limitations in maintaining attention, concentration, or pace for periods of at least two hours, extreme limitations in maintaining social functioning, and marked to extreme limitations in maintaining activities of daily living. R. 424-25. The psychiatrist also found that Clark "has severe anxiety in groups of people which has severe effects on his ability to function, work, go to school [and] attend family gatherings" and concluded that he "is [a] severe treatment failure to date." R. 425.

The ALJ discounted Dr. Edwards' opinion because his description of the claimant's limitations "is clearly inconsistent with the relatively conservative treatment." R. 36. The mental health records indicate that Clark has received conservative treatment for his anxiety and panic attacks. For example, progress notes indicate that Clark's symptoms of anxiety steadily decreased after receiving treatment at GrandView Behavioral Health Center between March and November of 2011. R. 360, 420-21. On March 17, 2011, Clark presented to Dr. Edwards with complaints of "depressive symptoms, anxiety, and panic attacks which began in approximately 1990-92 and intensified upon the death of his mother in 1995" and that he had "no history of treatment aside from med[ication] prescribed by [primary care physician] (currently Clonazepam and Prozac)." R. 357. Clark also reported symptoms of "depressed

9

mood, anxiousness, insomnia, fatigue, feelings of worthlessness, difficulty concentrating, distractibility, excessive worry, and occasional [suicidal thoughts] without intent/plan." *Id*. His panic attacks "are characterized by increased heart rate, sweating, faintness, fearfulness, agoraphobia, and de-realization." *Id*. Dr. Edwards noted that Clark took medication prescribed by his primary care physician for the treatment of anxiety and/or a panic disorder since 1992, that he had a roommate, and that he was taking classes at Southern Union. R. 358.

On March 30, 2011, Clark reported suffering from panic attacks twice a week and of fears that he will lose control or have a heart attack. R. 362. His symptoms included shaking, headaches, lightheadedness, palpitations, depression, and breaking into a sweat while in a crowd. R. 362. Dr. Edwards diagnosed Clark as suffering from a panic disorder with agoraphobia, a major depressive mood disorder, and stress. *Id*. He prescribed a trial of Celexa, Klonopin, and Neurontin and recommended that he discontinue Prozac. *Id*. He also indicated "medical management only" for therapy needs. *Id*.

On April 13, 2011, Dr. Edwards noted that Clark is anxious and agitated and that he continues to panic despite taking Celexa. R. 419. He assessed panic disorder, prescribed a trial dosage of Xanax, and recommended stopping the morning dosage of Klonopin. *Id*.

On May 10, 2011, the psychiatrist noted that Clark awakens in the middle of the night thinking about off-the-wall issues, such as an old friend he has not seen in years, and that his panic attacks have not occurred in a week. R. 418. He noted that Clark was very anxious about returning to school. *Id*. Dr. Edwards assessed a panic disorder and recommended that

Clark temporarily stop taking Xanax and Klonopin and prescribed Valium. *Id.*

On June 1, 2011, Dr. Edwards found "patient is having much less pain [and] is not depressed," assessed a panic disorder, and advised him to return in one month. R. 417. On July 6, 2011, the psychiatrist noted Clark "is still panicking in crowds, had to drop another class [due to] anxiety but when not in the crowd or class is o.k." R. 416. Dr. Edwards noted that Clark was "anxious, not depressed, not psychotic" and with "no mood swings." R. 416. He assessed "panic disorder (severe)," prescribed a trial of Klonopin, Zoloft, and Abilify, and advised him to continue Xanax and to discontinue Celexa and Neurontin. *Id.*

On August 16, 2011, Dr. Edwards noted Clark "feels depressed, not severe" and that "his car is out of order and he's out of work and he's still in school." R. 415. Dr. Edwards found Clark suffered from increased anxiety and depressive symptoms, assessed a panic disorder, prescribed a trial of Abilify, and increased his prescription for Klonopin. *Id.* On August 30, 2011, Dr. Edwards noted that "Clark is doing better, but feels tired." R. 414. He assessed a panic disorder, advised him to continue with his current medication and prescribed Abilify. *Id.* Thus, Dr. Edwards' own medical records indicate that Clark's therapy sessions were primarily routine in nature and that he received conservative treatment for his panic disorder and other mental health problems. In addition, the record indicates that Clark was able to work with the aforementioned impairments before the date of onset and that his mental health condition steadily improved with appropriate treatment. The ALJ's determination that Clark was treated conservatively is supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate order will be entered.

DONE this 30th day of September, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE